673 A.2d 377

**Ann M. ANZALONE, Appellant,**

v.

**Peter L. ANZALONE, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1995.

Filed March 25, 1996.

202

Christopher C. Straub, Lancaster, for appellant.

Karen L. Semmelman, York, for appellee.

Before DEL SOLE, SAYLOR and HESTER, JJ.

SAYLOR, Judge:

This is an appeal by Mother, Ann Anzalone, from an order of the Court of Common Pleas of York County requiring Father, Peter Anzalone, to pay $215 per week for the support of his three children, $10 per week on account of arrears, and $36 per week for his children's tuition.

Peter Anzalone and Ann Anzalone were married on May 27, 1984 and are the parents of three children: Alexandra (born September 14, 1984); Elizabeth (born August 1, 1986); and Peter (born March 28, 1988). Apparently, the couple separated at some point during 1993 but continued to reside together in the marital residence until June 1994 when Husband moved to an apartment. The parties entered into a stipulation of parenting, adopted by the trial court on May 13, 1994, which awarded Mother and Father joint legal custody of their children. The stipulation established a custody schedule whereby the children spent approximately 60% of the time with Mother and 40% of the time with Father. Specifically, the children were with Father eleven out of every 28 days. The children

attend a private Catholic school with a total tuition cost of $900 per year per child.

Father is employed by Red Lion Controls, Inc. as Vice President of Marketing and earns $124,530 per year, which consists of his gross salary and bonuses. Additionally, Father has the use of a company-owned vehicle for which the trial court imputed income of $250 per month. The trial court determined that Father has a net monthly income of $6,563.

Mother is 36 years old and received a high school diploma in 1976. Prior to the parties' marriage, Mother was employed by National Products Corporation in New Jersey as a clerk in the accounts receivable department. Mother was paid minimum wage and her duties included general clerical work, typing and reception duties. Mother stopped working in 1984 after the birth of the parties' first child and she has not been employed on a regular basis since that time. Mother currently volunteers approximately 15 to 25 hours per week at her children's parochial school which offsets her portion of the children's tuition. Father's expert, Dr. Paul Anderson, prepared a vocational evaluation report which indicated that Mother has an annual earning capacity of $14,481 per year, with $1,063 monthly net income, as a general office clerk.

On June 11, 1993, Father filed a complaint in divorce. Subsequently, Mother filed a complaint for spousal and child support.[1] Following a conference on July 14, 1994, a hearing officer of the Domestic Relations Section entered a temporary order which recommended that Father pay $351 per week for the support of his three children. Mother and Father both filed exceptions to the Master's Report and Mother requested that a special hearing be scheduled before the trial court.

Following a hearing, the trial court entered an order requiring Father to pay $215 per week for the support of his three children. This order represented a deviation from the guidelines based upon the existing custody arrangement whereby

1. Mother subsequently withdrew her request for spousal support and elected to pursue a claim for alimony pendente lite.

Father has the children 40% of the time and Mother has the children 60% of the time. This appeal by Mother followed.

Mother raises the following issues on appeal:

1) Whether the trial court erred with regard to its determinations of the parties' respective net incomes and reasonable needs.

2) Whether the trial court erred by deviating from the child support guidelines, thereby reducing the child support payment to Mother for the parties' three children.

■ Mother first contends that the trial court erred in determining that Father's federal income tax liability was $36,000 rather than $24,000, thus reducing his net income, and erred by assigning her an excessive earning capacity. We find no merit to either contention.

The hearing in this matter was held on November 21, 1994. At that time, the court determined that Father had a monthly net income of $6,563. The court apparently based this figure in part on Father's projected 1994 federal income tax liability of $36,000, as determined by the hearing officer, which was predicated on his status as married, filing separately with only one exemption.

Although Mother's attorney represented at the hearing that she would be willing to join Father in filing a joint return, there was no firm assurance that she would in fact do so. Additionally, we note from the record that Mother had previously refused to allow Father to claim the children as exemptions on his tax return. Thus, we find no error on the part of the trial court in its determination of Father's potential tax liability based upon the facts as they existed at the time of the hearing.

■ Nor do we find that the earning capacity assigned to Mother was excessive. This figure of $14,481 was that of an entry level office clerk. In making this determination the court considered the relevant factors, including Mother's age, education, and previous work experience as an office clerk, *see,*

*Klahold v. Kroh,* 437 Pa.Super. 150, 157, 649 A.2d 701, 704 (1994), as well the testimony of Father's vocational expert.

■ In her second issue, Mother challenges the court's decision to deviate from the support guidelines based upon the parties' existing custody arrangement whereby Father has the children 40% of the time and Mother has the children 60% of the time. In doing so, the trial court stated that York County has historically recognized that in a traditional majority/minority physical custody arrangement the minority custodian has custody approximately 20% of the days of each year; "[w]hen there is an assertion by the minority physical custodian that he or she has custody of the child or children an unusual amount of time, that claim is typically measured against the foregoing standard." Trial Court Opinion, p. 11. The downward deviation resulted in an almost 50% reduction in the amount of Father's support obligation as calculated by reference to the guidelines.

In considering a parent's claim that he or she is entitled to a downward deviation from the amount of support which would otherwise be payable under the guidelines, certain principles are applicable. First, the Uniform Support Guidelines were intended to provide minor children with the same proportion of parental income they would have received if the parents lived together. The appropriate amount of support is to be based upon the reasonable needs of the child and the ability of the obligor to provide support. The guidelines create a rebuttable presumption that the amount of support determined from the guidelines is the correct amount of support to be awarded. Pa.R.C.P. No. 1910.16–1, Explanatory Comments A and B; Pa.R.C.P. No. 1910.16–1(b). Second, while deviation from the amount of support determined by the guidelines is permitted, the trial court must specify, in writing, the guideline amount of support and the reasons for, and findings of fact justifying, the amount of the deviation. Pa.R.C.P. No. 1910.16–4(a). Third, in deciding whether to deviate from the amount of support determined by the guidelines, the trial court must consider the factors set forth in Pa.R.C.P. No. 1910.16–4(b). Finally, the support guidelines contemplate that

"the non-custodial parent has regular contact, including vacation time, with his or her children, and that he or she makes direct expenditures on behalf of the children. Thus, a non-custodial parent's support obligation should be reduced only if that parent spends an unusual amount of time with the children." Pa.R.C.P. No. 1910.16–5(m).

In this case, the trial court acknowledged the relevant provisions of the guidelines and then proceeded to a deviation based upon what it described as an offset method, by which it appears to have calculated each parent's respective support obligation by reference to the percentage of time which each parent has custody of the children and "offset" one against the other. The trial court also stated that in order not to limit its inquiry to a purely mechanical or mathematical formula as instructed by *Connor v. Connor,* 434 Pa.Super. 288, 642 A.2d 1136 (1994), it had reviewed the parties' expense information, "including various household expenses and needs as they provide for the children." Nevertheless, it is very clear that the court's order was predicated on the percentage of time which Father spends with his children. There is no finding in this record that the amount of time spent by Father with his children was so unusual as to justify a deviation from the guidelines. Many of the expenses cited by Father, as for example, suitable sleeping quarters for the children when in his custody, do not appear to be unusual and in any event would be necessarily incurred no matter what percentage of time Father had the children in his custody.

In *Connor v. Connor, supra,* the appellee/mother sought and was granted a downward deviation from the guidelines based on the fact that she had her children 27% of the time. On appeal, the Superior Court vacated the support order. Judge Del Sole, writing for the majority, explained the rationale for doing so:

> The trial court in the case before us did not make a determination that appellee spends an unusual amount of time with the children but merely noted that appellant's physical custody of the children is 73% and appellee's is 27%, and that the order would be reduced accordingly. We

are unconvinced by appellee's argument that the amount of time that she has physical custody of the children is unusual or that she spends more money on them for food, transportation and extra-curricular activities. Expenses for food and shelter have already been factored into the support guidelines. The support guidelines also contemplate that the non-custodial parent has regular contact, including vacation time, with his or her children, and that direct expenditures on behalf of the children will be made.

The non-custodial parent's support obligation should not be reduced absent a determination that the parent spends an unusual amount of time with the children or where unique financial needs can be demonstrated. The 1993 amendment to the support guidelines require[s] that any amount of support deviation from the amount determined by the guidelines be specified in writing, and the court must indicate the guideline amount of support and the reasons or findings of fact justifying the amount of the deviation. The trial court's meager explanation does not justify a 27% reduction of the appellee's child support obligation. The only discernable reason for the arbitrary 27% reduction from the guideline payment amount is that the appellee has physical custody of the children 27% of the time.

*Connor v. Connor,* 434 Pa.Super. at 293–294, 642 A.2d at 1138–1139.

In *Dalton v. Dalton,* 409 Pa.Super. 258, 597 A.2d 1192 (1991) (plurality), the Superior Court affirmed the trial court's determination that a custody arrangement whereby Father spends approximately 42% of the time with his children was not so unusual as to warrant reduction in the guideline amount of child support.

Thus, deviation from the guidelines based upon a prevailing custody arrangement is appropriate only if the parent seeking a reduction spends an unusual amount of time with the children. Pa.R.C.P. No. 1910.16–5(m). Such a determination requires specific factual findings regarding the amount of time actually spent with the children on a regular basis, whether that amount of time is "unusual," and whether

additional significant expenses are incurred as a result of the custody arrangement, with due regard for the fact that the guidelines contemplate that the non-custodial parent will make direct expenditures on behalf of the children in addition to the amount paid as support under the guidelines. An arbitrary mathematical formula will not serve to supplant such an analysis. The trier of fact must keep firmly in mind the ultimate goal of entering a final order of support which will best serve the needs and interests of the dependent children. Finally, a parent should not be allowed to use the amount of time which he or she spends with the children as a method of reducing his or her support obligation at the expense of the children: "[A] parent's support obligation as determined by the guidelines will not be reduced by allocating the time that each parent spends with the children as this is a misapplication of the guidelines." *Connor v. Connor, supra,* 434 Pa.Super. at 294, 642 A.2d at 1139.

Having concluded that a deviation is not supported on this record, we vacate the order and remand for a determination of Father's support obligation consistent with this opinion. Jurisdiction is relinquished.