J-S94005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.R.S. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| C.M.B. N/K/A C.M.W. | |
| Appellant | No. 1401 MDA 2016 |

Appeal from the Order Entered August 4, 2016
In the Court of Common Pleas of York County
Civil Division at No(s): 2006-FC-001862-03

BEFORE:  LAZARUS, J., RANSOM, J., and FITZGERALD, J.*

MEMORANDUM BY LAZARUS, J.:                 **FILED FEBRUARY 15, 2017**

C.M.B. n/k/a C.M.W. ("Mother") appeals from the order, entered in the Court of Common Pleas of York County, granting J.R.S. ("Father") sole legal custody and primary physical custody of Daughter and Son, ages 15 and 17, respectively, at the time of the custody trial in August 2016.  We are constrained to vacate and remand.

A review of the certified record indicates that the parties married in 1995 and separated in 2006.  Mother is an audiologist; Father is a family physician.  When the parties separated, Mother had primary physical custody of the children.  Father had partial physical custody (Wednesdays

_____

* Former Justice specially assigned to the Superior Court.

and every other weekend). This arrangement, adopted by court order, continued through 2009.

In 2008, Mother entered into a relationship with J.B., a disabled veteran. J.B. moved in with Mother and children.

In 2010, Mother moved to Wisconsin to assist with family health issues. Father consented to Mother's relocation with the children. Mother and J.B. married in Wisconsin. Mother and Father arranged for Father to have custody of the children during the summer months and school breaks. J.B. homeschooled the children. Around this time, Father remarried; Father's wife ("Stepmother") has a young daughter.

In March 2012, while the children were visiting Father in Pennsylvania, Daughter revealed to Stepmother, with whom she has a close relationship,[1] that J.B. had sexually assaulted her. Father immediately notified Mother that the children would not be returning to Wisconsin. Mother's initial position was that Daughter was not being truthful and that J.B. was innocent. Mother stated that Daughter never told her or Son anything directly and that "neither one of us had any idea." N.T. Custody Trial, 8/1/16, at 94.[2]

_____

[1] Daughter calls Mother by her first name, and refers to stepmother as "mom." Trial Court Opinion, 8/4/16, at 4.

[2] The court questioned Mother as to why she initially did not believe Daughter. In fact, it was a year before Mother believed Daughter. Mother stated:

*(Footnote Continued Next Page)*

In September 2013, Mother returned to York County for a court-ordered visitation with the children, which did not go well. Mother, who was staying at a hotel in York, arranged for a private investigator hired by J.B. to meet with the children in the hotel room, apparently at the behest of J.B.'s criminal defense attorney. When questioned, Daughter became upset, and ultimately the police became involved. Thereafter, the court suspended visitation, limiting Mother's contact with Daughter and Son to letters and emails.

*(Footnote Continued)* ─────────────

> [J.B.] came across as this ultra[-]Christian person. He would never do anything like that, I mean according to him[.] . . . He was very manipulative and controlling in many ways. [L]ike my relationship with my kids and with [Father] as co-parent, he got in the middle of all that . . . I think we had a really good co-parenting relationship before. . . But when [J.B.] got into it, all of a sudden there were always issues. . . .[H]e just wanted to control everything. And that whole thing with homeschooling the kids was like his way of controlling how often [Father] got to see the kids. . . . I let him walk all over me . . . he took control of everything and controlled me by – I was a born again Christian. And he took my – I was a newborn Christian. So he came across – and even though we weren't [yet] married, he was the man of the house. And I had to be submissive to him and that included in regards to the kids.

N.T. Custody Trial, 8/1/16, at 94-96. During the *in camera* interview, the court asked Daughter if there was a reason she did not tell Mother about the sexual abuse. Daughter stated, "She never really asked. So I didn't really – I was little. So I didn't realize how wrong that was, how bad that was that it was going on." ***Id.*** at 39.

In April 2013, J.B. was convicted of first-degree sexual assault against a child and was sentenced to two consecutive fifteen-year sentences. Trial Court Opinion, 8/4/16, at 8. At the custody trial, Mother testified that, although estranged from J.B, she had not commenced divorce proceedings on the advice of counsel due to ongoing bankruptcy proceedings, but intends to file for divorce. Mother also noted that she has had substantial therapy since J.B.'s conviction. She has apologized several times to Daughter, by letter, by videotape, and at a reunification counseling session she attended with Daughter. Mother has also apologized to Father.

Mother filed a petition for modification of custody, seeking to re-establish physical custody.[3] At the custody trial, the court interviewed Daughter and Son *in camera*, and heard testimony from Mother, Father, and Stepmother. Both Daughter and Son expressed a preference to maintain the status quo, continuing a weekly schedule of telephone calls with Mother. Essentially, Daughter stated that she is not ready to have physical contact with Mother, but agreed to continue reunification counseling. At the time of the custody trial, Daughter and Mother had participated in two reunification counseling sessions together.

_____

[3] Mother currently lives alone. She works for a consortium of schools, and her work schedule is tied to the school calendar.

Son, who is almost eighteen, expressed a desire to continue the relationship on his own terms.[4] Father supports Mother's and Daughter's reunification counseling, and is not opposed to ultimate contact, but his position is that the relationship should proceed at Daughter's pace.

Following the custody trial, the court entered an order on August 4, 2016, awarding Father sole legal custody. *See* 23 Pa.C.S. § 5332(a) (defining "sole legal custody" as '[t]he right of one individual to exclusive legal custody of the child."). The court did allow Mother access to the children's medical, dental, religious and education records pursuant to 23 Pa.C.S. § 5336. The court granted Father primary physical custody of the children,[5] and permitted Mother one phone call per week for each child until each child reached 18 years of age. The court also permitted Mother to contact the children by email and letters. The order further stated:

> The parties are free to modify the terms of this Order, but in order to do so, the Court made it clear that both parties must be in complete agreement to any new terms. That means both parties must consent on what the new terms of the custody arrangement or schedule shall be.

> In addition to the above, the Court orders the following:

> (1) Mother shall engage in one session of counseling with Ann Shorb[,] Ph.D. to address issues of reunification with Daughter. If acceptable to Dr. Shorb, Mother may

---

[4] Although the custody order at issue pertains to both children, the issues before us concern only Daughter.
[5] We note that Father's custody award, at present, is more properly labeled sole physical custody. 23 Pa.C.S. § 5323

participate via phone. Mother shall be responsible for payment.

(2) Upon completion of the above, Mother and Daughter shall have one joint session [of] reunification counseling. If acceptable to Dr. Shorb, Mother may participate via phone. Responsibility for payment shall be with Mother.

(3) Upon completion of the above, Dr. Shorb shall notify Mother and Father of her recommendation as to the value of continued reunification counseling between Mother and Daughter. If counseling is to continue, Dr. Shorb shall determine the method and duration of counseling. If counseling is to be terminated, Mother shall have no physical contact with [Daughter].

(4) If recommended by Dr. Shorb, Mother may enjoy temporary physical custody with Daughter in York County for brief periods of time as designated by Dr. Shorb.

Final Custody Order, 8/4/16, at 1-6.

Mother filed a timely notice of appeal from the final custody order. On August 25, 2016, the court entered an order requiring Mother to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Mother timely filed that day. The court filed a Rule 1925(a) opinion. Mother raises the following issues for our review:

1. Did the trial court err by failing to provide [M]other any rights of legal or physical custody, effectively terminating her parental rights?

2. Did the trial court err by failing to provide any discernible path towards reconciliation of the relationship between [M]other and [D]aughter?

3. Did the trial court err by abdicating its responsibility of fashioning the order, deferring instead to [Daughter's] counselor to determine what, if any, rights of custody [M]other shall have?

Appellant's Brief, at 5.

In custody cases, our standard and scope of review are as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted); *see also M.A.T. v. G.S.T.*, 989 A.2d 11, 18-19 (Pa. Super. 2010) (en banc) ("An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence."); *Bulgarelli v. Bulgarelli*, 934 A.2d 107, 111 (Pa. Super. 2007). Additionally, this Court has observed that

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody

proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006), citing *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004). Section 5328 of the Child Custody Act, 23 Pa.C.S. §§ 5321-5340, provides an enumerated list of factors a trial court must consider in determining the best interests of a child when awarding any form of custody.[6]

_____

[6] **§ 5328. Factors to consider when awarding custody**

(a) Factors.—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

*(Footnote Continued Next Page)*

*(Footnote Continued)* ────────────

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate childcare arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from.abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

*(Footnote Continued Next Page)*

Here, the trial court considered each factor and provided a comprehensive analysis in its opinion in support of the order. ***See*** Trial Court Opinion, 8/4/16, at 1-19. Of the fifteen factors enumerated, the court found that ten favored Father and the remainder were "neutral." Mother's complaint is not with the court's analysis, however. Instead, she argues that the court's order is effectively a termination of her parental rights, and that the court erred in deferring the custody decision to Dr. Shorb.[7]

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯

23 Pa.C.S. § 5328(a)(1)-(16).

[7] Section 5323(a) delineates the various types of custody awards and provides, in relevant part:

> 5323. Award of Custody.
>
> (a) Types of award.—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:
>
> > (1) Shared physical custody.
> >
> > (2) Primary physical custody.
> >
> > (3) Partial physical custody.
> >
> > (4) Sole physical custody.
> >
> > (5) Supervised physical custody.
> >
> > (6) Shared legal custody.
> >
> > (7) Sole legal custody.

23 Pa.C.S. § 5323(a). The Act defines the types of custody awards, in relevant part:

_(Footnote Continued Next Page)_

- 10 -

First, we point out that the court's order is *not* a termination decree. Although the order is restrictive, it does not preclude the reunification of Mother and Daughter.

In **Kimock v. Jones**, 47 A.3d 850, 854-55 (Pa. Super. 2012), a child support case, we addressed a similar argument. There, the trial court had entered an order granting mother sole legal and sole physical custody of child. The court determined: (1) reunification therapy would not benefit child; (2) father was incapable of making reasonable child-rearing decisions for child; (3) child did not recognize father as a source of security and love;

*(Footnote Continued)* ————————

§ 5322. Definitions.

. . .

"Partial physical custody.".—The right to assume physical custody of the child for less than a majority of the time.

"Physical custody.".—The actual physical possession and control of a child.

"Primary physical custody.".—The right to assume physical custody of the child for the majority of time.

. . .

"Sole physical custody." The right of one individual to exclusive physical custody of the child.

. . .

"Sole legal custody.".—The right of one individual to exclusive legal custody of the child.

23 Pa.C.S. § 5322(a).

(4) father and mother could not cooperate concerning child's development and well-being; and (5) shared legal custody was no longer in child's best interests. Consequently, the court limited father's contact with child as permitted and deemed appropriate by mother, and allowed father access to child's medical, dental, religious, and/or school records indirectly, through mother. Father argued on appeal that his custody order so severely restricted his custodial rights that it amounted to an involuntary termination of his parental rights under the Adoption Act. *See* 23 Pa.C.S. § 2511. He claimed, therefore, that the court should extinguish his child support obligation.

> In rejecting father's argument, our Court stated:
>
> The proceeding for involuntary termination of parental rights stands upon a different foundation, a different standard of review, and requires judicial determinations in keeping with these statutory requirements. There is no provision for termination of parental rights at common law and, like adoption, it is purely a creature of legislation. . . . [T]ermination of parental rights for all practical purposes ends the parent/child relationship as unequivocally as the death of the child. . . . Additionally, [a] decree . . . terminating all rights and duties of a parent entered by a court of competent jurisdiction shall extinguish the power or the right of the parent to object to or receive notice of adoption proceedings. Because an order terminating parental rights forever severs that relationship, an order terminating parental rights also terminates a parent's obligation to pay child support.

*Kimock*, 47 A.3d at 854 (citations and quotations omitted). The *Kimock* Court further stated that: "Importantly, the court's order left open the possibility for reunification between Father and Child at some time in the

future[,] and allowed Father to have contact with Child and access to Child's records, albeit under restricted means." *Id.* at 857. The Court concluded, therefore, that the restrictive custody order did not "effectively" terminate father's parental rights. *Id.*

The trial court here imposed similar restrictions. The court also ordered a joint reunification counseling session and left "open the possibility of reunification" between Mother and Daughter. *Id.* We conclude, therefore, that Mother's argument that the court's order terminated her parental rights is meritless.

We agree, however, with Mother's argument that the trial court erred in deferring the custody determination to Dr. Shorb. This Court has long held that, in child custody disputes, a trial court has the "authority and the responsibility to attempt to save any family relationship which exist[s]." *Lewis v. Lewis*, 414 A.2d 375, 378 (Pa. Super. 1979) (citing *Commonwealth ex rel. Ermel v. Ermel*, 393 A.2d 796 (Pa. Super. 1978)).

The trial court acknowledged that Mother does not pose a danger to Daughter, but recognized Daughter's lack of trust and security with respect to Mother. Further, it appears the court gave considerable weight to Daughter's *in camera* testimony. *See Ketterer*, *supra* at 540 (child's preference is "an important factor that must be carefully considered in determining the child's best interest."); *Grieb v. Driban*, 458 A.2d 1006, 1007 (Pa. Super. 1983) ("The weight to be accorded the child's preference

- 13 -

varies with the age, maturity and intelligence of the child and the reasons given for the preference.").

Daughter was fifteen years old and in tenth grade at the time of her *in camera* testimony. She testified as follows:

Q: Does [Mother] believe you now?

A: Yeah. She says that she does.

Q: Do you believe that?

A: Yeah. But I mean I don't remember if she is really like – like, I know – I feel like she was sorry. But I felt like she doesn't really care about what I need. Like, she just wants to start pushing forward even though it is not forward for me. It is forward for her.

\* \* \*

Q: What would you want [your relationship with Mother] to look like?

A: Well, right now I don't really see having a relationship with her. Like, I don't really want that right now. But I mean, like, I can't really see just talking to her like everything is fine, you know I'd talk to her if nothing happened like the way I talk to [Stepmother]. I can't picture talking to her like that, just hanging out. I just can't see that. It doesn't seem realistic.

N.T. Custody Trial, 8/1/16, at 46-49.

To be clear, in less than two years Daughter will reach the age of majority and can decide the extent of her relationship with Mother. Until that time, however, this matter is before the court, and it is the trial court's responsibility to determine what is in Daughter's best interest. From our review, it is apparent that the court abdicated this duty, deferring to Dr.

- 14 -

Shorb's professional judgment as to whether, after "one joint session of reunification counseling[,]" counseling should continue or be terminated, in which case Mother *shall have no physical contact with Daughter*. Further, the order states that the "Mother may have temporary physical custody with Daughter in York County for brief periods of time as designated by Dr. Shorb[]" *if recommended by Dr. Shorb*. Final Custody Order, 8/4/16 (emphasis added).

Accordingly, we vacate the custody order and remand so that the court may enter an order consistent with this memorandum.

Vacated and remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/15/2017