Catherine KIMOCK, Appellee

v.

Thomas JONES, Appellant.

Superior Court of Pennsylvania.

Argued March 13, 2012.

Filed June 19, 2012.

Stanley J. Margle, III, Bethlehem, for appellant.

Linda S. Gardner, Bethlehem, for appellee.

BEFORE: GANTMAN, J., SHOGAN, J., and WECHT, J.

OPINION BY GANTMAN, J.:

Appellant, Thomas Jones ("Father"), appeals from the order entered in the Northampton County Court of Common Pleas, which denied Father's petition to terminate child support for his daughter, C.T.J. ("Child"). Father asks us to determine whether the court's most recent custody order (granting Appellee, Catherine Kimock ("Mother"), sole physical and legal custody of Child and limiting Father's contact with Child as permitted and under conditions deemed appropriate by Mother) was tantamount to termination of Father's parental rights such that he should no longer have to pay child support. On this record, we hold that the court's restrictive custody order did not "effectively terminate" Father's parental rights, as alleged;

and Father failed to demonstrate a "material and substantial change" in circumstances to permit complete relief from his child support obligation. Accordingly, we affirm.

The relevant facts and procedural history of this case are as follows. Mother and Father were married on February 20, 1993, and Child was born the following year.[1] Throughout the marriage, Father verbally and physically abused both Mother and Child. Mother and Father separated in 2004, and on April 15, 2004, Mother filed a divorce complaint. Child lived with Mother after the parties separated, and Father had no contact with Child for the next year. On April 8, 2005, Father filed a custody complaint. Pursuant to stipulation, the court entered an order on August 12, 2005, awarding primary physical custody to Mother and shared legal custody to both parties. The court's order also required Father and Child to participate in reunification counseling therapy, with the goal of establishing regular visitation and partial physical custody for Father. During the counseling sessions, Child ignored Father and on at least one occasion, she attended the session with a blanket over her head to avoid contact with Father. Father admitted during therapy that he had "anger issues." The reunification counseling proved unsuccessful and ceased in 2005, after only five sessions.

On July 13, 2006, Father filed a *praecipe* to have the case scheduled for a conference before a custody master. Following the conference, the parties entered into an agreement, adopted as a court order on August 11, 2006, requiring Father to undergo a diagnostic evaluation with a psy-chologist. Dr. Ronald J. Esteve evaluated Father and concluded he suffered from bipolar disorder. Dr. Esteve recommended that Father complete extensive psychotherapy before attempting further reunification with Child. Despite Dr. Esteve's recommendation, Father insisted he did not have bipolar disorder and refused to undergo additional psychotherapy.[2]

Father had no contact with Child between the last reunification attempt in 2005 until September 2009. On September 24, 2009, Father filed a petition to modify custody and to compel reunification therapy. The court subsequently ordered Father to participate in individual reunification therapy with Terrence P. Brennan, M.A.; Child would continue individual therapy with Theresa Applegarth, L.P.C. Pursuant to court order, Mr. Brennan and Ms. Applegarth would confer after six weeks of conducting individual therapy with Father and Child, respectively, to determine whether continued reunification therapy was in Child's best interests. If not, Mr. Brennan was directed to issue a report to the court indicating reasons why reunification therapy was not in Child's best interests. On October 16, 2010, Mr. Brennan issued a report stating Child strongly opposed reunification therapy and threatened to harm herself if required to participate. Nevertheless, Mr. Brennan declined to say whether continued reunification therapy was in Child's best interests because Mr. Brennan was unable to confer with Ms. Applegarth.

On January 24–25, 2011, the court held a hearing on Father's petition to modify custody. At the hearing, Mother testified that the ongoing litigation has caused

1. During all of these proceedings, Child was a minor; she has since reached the age of majority. Nevertheless, Child has some mental health issues, which could extend Father's child support obligation beyond Child's eighteenth birthday.

2. The parties were divorced on February 12, 2007.

Child to hurt herself. Child testified she saw Father only one time since ending reunification therapy in 2005; on that occasion, Child threw up after seeing Father and became extremely irate later that evening. Child testified she would "run" or harm herself if ordered to participate in reunification therapy. Ms. Applegarth testified that Child has been diagnosed with and treated for attention deficit disorder, obsessive compulsive disorder, post-traumatic stress disorder, and an eating disorder, since 1999. Ms. Applegarth opined that the risks of reunifying Father and Child outweighed any potential benefits. In fact, Ms. Applegarth was unable to identify **any** benefit to Child in pursuing reunification therapy at that time and suggested Child should work individually through her issues about Father. Ms. Applegarth expressed concerns that Child would run away or harm herself if the court ordered reunification. Father explained he wanted to attempt reunification therapy, despite his non-compliance with Dr. Esteve's recommendation to undergo extensive individual psychotherapy beforehand. Father indicated he had tried to correspond with Child *via* e-mail, cards, and letters; but Child consistently refused to acknowledge Father's efforts.

On February 8, 2011, the court denied Father's petition to modify custody. Additionally, the court determined shared legal custody was no longer in Child's best interests. Consequently, the court entered the following order:

AND NOW, this *8th* day of February, 2011, [Father's] Petition for Modification of Custody is hereby **DENIED.** [Mother] is hereby granted sole physical and legal custody of [Child]. [Father] may only have contact with Child as permit-ted by [Mother] and under such conditions deemed appropriate by [Mother].

Pursuant to 23 Pa.C.S.A. § 5309(b) [now 23 Pa.C.S.A. § 5336(c) ], [Father] shall not have direct access to Child's medical, dental, religious, or school records. Rather, [Mother] shall provide to [Father] copies of Child's school records, including, but not limited to, grade reports and scholastic achievements. [Mother] shall notify [Father] of any extraordinary medical or dental treatment as soon as practical.

[Mother] shall not make, or permit anyone else to make, derogatory or negative comments about [Father] or his family members in the presence of Child.

(Order, 2/8/11, at 1–2).

On February 16, 2011, Father filed a petition to terminate child support,[3] alleging the court's February 8, 2011 order effectively terminated his parental rights to Child such that he should no longer have to pay child support. Following a hearing, the court denied Father's petition on May 17, 2011. On June 13, 2011, Father timely filed a notice of appeal. The next day, the court ordered Father to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Father timely filed on June 20, 2011.

Father raises one issue for our review:

DID THE TRIAL COURT COMMIT AN ERROR OF LAW OR ABUSE OF DISCRETION IN DENYING FATHER'S PETITION FOR TERMINATION OF CHILD SUPPORT?

(Father's Brief at 4).

■ Our standard of review over child support orders is:

---

3. At that time, Father's child support obligation was six hundred and twenty-eight dollars ($628.00) per month, plus one hundred and twenty-six dollars ($126.00) per month on arrears.

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Brickus v. Dent,* 5 A.3d 1281, 1284 (Pa.Super.2010) (quoting *Silver v. Pinskey,* 981 A.2d 284, 291 (Pa.Super.2009) (*en banc* )). *See also Ricco v. Novitski,* 874 A.2d 75, 79 (Pa.Super.2005).

Father argues the court's February 8, 2011 custody order so severely restricted his contact with Child that it was analogous to an involuntary termination of his parental rights under the Adoption Act. Father asserts an involuntary termination of parental rights order extinguishes an obligor's duty to pay child support; the custody order at issue should similarly absolve Father's support obligation. Father concedes the involuntary termination of parental rights procedures under the Adoption Act involve a higher burden of proof. Nevertheless, Father claims this distinction is irrelevant where the practical effect of the court's custody order is the same as an order terminating parental rights. Father maintains the court's order prevents him from assisting in Child's development and ensures that his only role in Child's life is one of financial support. Father acknowledges Child was seventeen at the time of the pertinent proceedings, but he emphasizes Child has some mental health issues which might preclude her from graduating high school on time and ultimately extend Father's support obligation after Child reaches the age of majority. Father concludes the court's custody order essentially operated to terminate his parental rights such that it should also extinguish his obligation to pay child support, and this Court must reverse the order denying his petition for relief from child support. We disagree.

■ Initially, we observe that custody cases and involuntary termination of parental rights cases, under the Adoption Act, are markedly different in both purpose and procedure. *In re B.L.L.,* 787 A.2d 1007 (Pa.Super.2001).

The most significant difference between custody cases and termination cases lies with the quality of the determination which directly impacts on the standard of review. As between parents and others who have standing in a custody case, the standard of review is preponderance of the evidence.... In making an Order for partial custody or primary custody, the court must consider the preference of the child as well as other factors which legitimately impact the child's physical, intellectual and emotional wellbeing. It is important for the court to at least attempt to determine, as best it can, the child's preference, which must comport with the child's best interest.

\*     \*     \*

■ **The proceeding for involuntary termination of parental rights stands upon a different foundation, a different standard of review, and requires judicial determinations in keeping with these statutory requirements.**

There is no provision for termination of parental rights at common law and, like

adoption, it is purely a creature of legislation. Initially, **termination of parental rights for all practical purposes ends the parent/child relationship as unequivocally as the death of the child,** ... and for that reason ... the standard of proof [is] clear and convincing evidence.

Secondly, the best interest of the child is not the first and only consideration. The court must initially find that the statutory requirements for termination of parental rights have been met. The balancing test between two parents involved in a custody proceeding is not applicable because parental rights are not being divested as they would be following involuntary termination. Thus, the best interest standard applicable in custody cases requires the court to weigh which parent will be best able to serve the needs of the child. In a termination case, only after the court in a bifurcated process has determined within the same proceeding that the parent has or has not forfeited his right to parent the child, must the court turn to review of the needs and welfare of the child.

*Id.* at 1012–14 (emphasis added) (internal citations omitted). *See also* 23 Pa.C.S.A. § 2511 (delineating statutory grounds for involuntary termination of parental rights). Additionally, "[a] decree terminating all rights of a parent or a decree terminating all rights and duties of a parent entered by a court of competent jurisdiction shall extinguish the power or the right of the parent to object to or receive notice of adoption proceedings." 23 Pa.C.S.A. § 2521(a). Because an order terminating parental rights forever severs that relationship, an order terminating parental rights also terminates a parent's obligation to pay child support. *Kauffman v. Truett,* 771 A.2d 36, 38 (Pa.Super.2001).

With respect to child support, our Supreme Court has stated:

The principal goal in child support matters is to serve the best interests of the child through provision of reasonable expenses. The duty of child support, as every other duty encompassed in the role of parenthood, is the equal responsibility of both mother and father. As this duty is absolute, it must be discharged by the parents even if it causes them some hardship.

*Yerkes v. Yerkes,* 573 Pa. 294, 297–98, 824 A.2d 1169, 1171 (2003) (internal citations and quotation marks omitted).

■ Pennsylvania Rule of Civil Procedure 1910.19 sets forth the relevant guidelines to terminate a support order:

**Rule 1910.19. Support. Modification. Termination. Guidelines as Substantial Change in Circumstances. Overpayments**

(a) A petition for modification or termination of an existing support order shall specifically aver the material and substantial change in circumstances upon which the petition is based. A new guideline amount resulting from new or revised support guidelines may constitute a material and substantial change in circumstances. The existence of additional income, income sources or assets identified through automated methods or otherwise may also constitute a material and substantial change in circumstances.

Pa.R.C.P. 1910.19(a). "The burden of demonstrating a material and substantial change rests with the moving party, and the determination of whether such change has occurred in the circumstances of the moving party rests within the trial court's discretion." *Summers v. Summers,* 35 A.3d 786, 789 (Pa.Super.2012). *See also Yerkes, supra* (explaining parent's incarceration, by itself, does not constitute ma-

terial and substantial change to warrant modification or termination of child support; denial of father's petition to terminate support was particularly appropriate where father's incarceration was based on his sexual assault of daughter; relief is prohibited where misconduct which resulted in appellant's imprisonment was perpetrated against child for whom appellant owed duty of support).[4]

■ The obligation to support one's child does not depend on a parent's custodial rights. *Kauffman, supra.* *See also Luzerne County Children and Youth Services v. Cottam,* 412 Pa.Super. 268, 603 A.2d 212 (1992), *appeal denied,* 530 Pa. 666, 610 A.2d 45 (1992), *cert. denied,* 506 U.S. 960, 113 S.Ct. 425, 121 L.Ed.2d 347 (1992) (holding father owed duty to support child even though child was placed in care of CYS). Additionally, the amount of time a parent spends with his child has no bearing on the parent's obligation to provide child support. *DeWalt v. DeWalt,* 365 Pa.Super. 280, 529 A.2d 508 (1987). "Though the parent-child relationship is the basis of this duty, a parent may not be released from this obligation by the actions of the child. A minor child cannot waive [her] right to support. This is so even if [she] renounces the parent and refuses to see him." *Id.* at 511. *See also Hanson v. Hanson,* 425 Pa.Super. 508, 625 A.2d 1212 (1993) (explaining obligation of support is not diminished even if child refuses to maintain relationship with parent). Likewise, a parent cannot use the amount of time he spends with his child as a method of reducing his support obligation at the expense of the child. *Anzalone v. Anzalone,* 449 Pa.Super. 201, 673 A.2d 377 (1996).

■ Instantly, in denying Father's petition to cease his child support obligation, the trial court reasoned:

This [c]ourt is not aware of any authority where a duty of support ends because of the terms of a custody order....

Father's position ignores the legal standards applicable to an involuntary termination of parental rights proceeding and a custody proceeding. In a proceeding to involuntarily terminate parental rights, the burden of proof is upon the party seeking termination to establish by "clear and convincing" evidence the existence of grounds for doing so. The standard of "clear and convincing" evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue. *In re R.M.G.,* 997 A.2d 339 (Pa.Super.2010)[, *appeal denied,* 608 Pa. 648, 12 A.3d 372 (2010) ].

When a [c]ourt is faced with a petition for modification of custody, the standard for the [c]ourt to follow is "the best interest of the child." It is well settled, that in any instance in which child custody is determined, the overriding concern of the court must be the best interest and welfare of the child, including the child's physical, intellectual, emotional, and spiritual wellbeing. *Shandra v. Williams,* 819 A.2d 87 (Pa.Super.2003).

[The court's February 8, 2011] decision was a decision reached after determining what custody arrangement was in the best interest of the child. At no time was [the court] asked to determine

---

4. Following the Supreme Court's decision in *Yerkes,* Rule 1910.19 was amended to include a provision allowing the court to modify or terminate child support when it appears to the court that the order is no longer able to be enforced under state law; or the obligor is unable to pay, has no known income or assets and there is no reasonable prospect that the obligor will be able to pay in the foreseeable future. *See* Pa.R.C.P. 1910.19(f).

whether there was clear and convincing evidence that Father's parental rights should be terminated.

The [c]ourt was unwilling to allow Father to escape his obligation to support his child simply because a [c]ourt determined that it was in the best interest of [C]hild that Father have no contact with her. Granting Father's petition could have the effect of having parents avoid their support obligations simply by terminating any contact they have with their child. Allowing a parent to end his obligation of support by having no contact through a custody order would allow a parent to choose an option that would allow him to terminate [his] support obligations. To allow the support obligation to end would be contrary to a parent's obligation to support his child and would be contrary to the best interest of a child. For these reasons, this [c]ourt denied Father's request for relief and ordered him to pay child support.

(Trial Court Opinion, filed August 8, 2011, at 3–4). We see no reason to disturb the court's decision to deny Father's petition to terminate child support under the facts of this case. *See Brickus, supra.*

The court evaluated the evidence presented at the hearing on Father's petition for custody under a preponderance of the evidence standard to determine the best interests of Child. At no time during that proceeding, was the court asked to evaluate the evidence under the statutory requirements of the Adoption Act, using a clear and convincing evidence standard. *See In re B.L.L., supra.* Here, the court decided by the preponderance of the evidence, *inter alia:* (1) reunification therapy would not benefit Child; (2) Father is incapable of making reasonable child-rearing decisions for Child; (3) Child does not recognize Father as a source of security and love; (4) Father and Mother cannot

cooperate concerning Child's development and wellbeing; and (5) shared legal custody was no longer in Child's best interests. (*See* Trial Court Opinion, filed February 8, 2011, at 20–21.) Consequently, the court limited Father's contact with Child as permitted, and under such conditions deemed appropriate, by Mother; and allowed Father access to Child's medical, dental, religious, and/or school records indirectly through Mother. Importantly, the court's order left open the possibility for reunification between Father and Child at some time in the future; and allowed Father to have contact with Child and access to Child's records, albeit under restricted means. Additionally, the court did not extinguish **all** of Father's rights concerning Child, *e.g.,* Father retains the right to receive notice of and object to adoption proceedings. *Compare* 23 Pa.C.S.A. § 2521. Thus, the restrictive custody order did not "effectively" terminate Father's parental rights. *See In re B.L.L., supra.*

Moreover, Father failed to prove that the custody order alone constituted a "material and substantial change" in circumstances for purposes of Rule 1910.19. *See Summers, supra.* Father provided the trial court with no variation in either his finances or Child's needs, which would affect his ability to pay support. *See* Pa. R.C.P. 1910.19. Instead, Father relied solely on his notion that the court's order limiting custody was the "material and substantial change" warranting relief from his support obligation. Absent more, we conclude the restrictive custody order was not a "material and substantial change" in circumstances as contemplated under the applicable rules. *See* Pa.R.C.P. 1910.19; *Kauffman, supra; Anzalone, supra; Luzerne County Children and Youth Services, supra.*

Significantly, Father was the primary cause of the estrangement. During and after the parties' marriage, Father verbally and physically abused both Mother and Child. Father's conduct made Child so angry, she threatened self-destructive behavior to avoid contact with him. Father also declined to follow Dr. Esteve's recommendation to complete extensive psychotherapy for his anger and bipolar disorder. Essentially, Father used his own egregious behavior and Child's reactive condition to try to end his support obligation. To grant Father's request would offend the goals of child support law and reward Father for destroying his relationship with Child. *See Brickus, supra.* Father cannot use his own misconduct and its ramifications to escape his absolute duty to support Child. *See Yerkes, supra.* Likewise, Child's refusal to maintain contact with Father does not relieve Father of his support obligation, under these facts. *See Hanson, supra; DeWalt, supra.*

Based upon the foregoing, we hold that the court's restrictive custody order did not "effectively terminate" Father's parental rights, as alleged; and Father failed to demonstrate a "material and substantial change" in circumstances to permit complete relief from his child support obligation. Accordingly, we affirm.

Order affirmed.