J-A23032-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.L.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| C.L.M. | : | |
| | : | |
| Appellant | : | No. 965 EDA 2020 |

Appeal from the Order Entered March 9, 2020
In the Court of Common Pleas of Montgomery County Domestic Relations
at No(s):  No. 2002-03274,
PACSES #587104428

BEFORE:  KUNSELMAN, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED OCTOBER 15, 2020**

C.L.M. appeals from the order entered in the Court of Common Pleas of Montgomery County (trial court) confirming its previous order setting the child support obligation of M.L.M., a high-income parent, within the meaning of the guidelines.[1]  This matter returns to us after remand and relinquishment of jurisdiction in **Metzker v. Marlowe**, 2019 WL 5212423 (Pa. Super. filed Oct. 16, 2019).  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** Pa.R.C.P. 1910.16-3.1 (guidelines governing high-income cases, adopted Jan. 12, 2010, effective May 12, 2010).

**I.**

This case has a protracted history dating from June 8, 2015, when M.L.M. filed a petition to modify his support order, the background of which is set forth in our prior Memorandum. We recite only the factual and procedural history pertinent to this appeal. M.L.M. is a non-custodial parent and resides in Texas, while C.L.M. and the parties' three children reside in Pennsylvania. M.L.M. is also the parent of twins he had with his second wife in Texas, from whom he is now separated. M.L.M. has traditionally been a high earner, with a net income of $51,725.00 per month in 2012 and 2013. On March 2, 2016, M.L.M. received capital gain income of $3.8 million net of taxes from his sale of stock in a biotechnology company.

This appeal involves M.L.M.'s support obligation for one of the parties' children, who had reached the age of eighteen and graduated from high school in June 2015 (Child). At the time the parties were litigating the issue of Child's support in the trial court, she was emancipated and attending college. At issue in this appeal are expenses for Child prior to her emancipation, specifically during high school. These are expenses C.L.M. contends would have been incurred on behalf of Child and for which M.L.M. should be held responsible as a high earner.

During the trial court proceedings, C.L.M. presented evidence of Child's actual expenses while attending high school. The expense sheets listed costs of private school tuition, tutoring, lessons, clothing, dining out,

nail/spa/haircare, summer camp, memberships, vacations, ski trips, entertainment and gifts. (**See** Exhibits M-26, M-41-44, Monthly Expense Sheets prepared by C.L.M.). The trial court found, after assessing the parties' credibility, that all of Child's actual expenses submitted by C.L.M. constituted reasonable needs. (**See** Trial Court Opinion, 12/27/18, at 11).

In addition to evidence of Child's actual expenses, Mother proffered an expense sheet listing items and activities that she could not afford to provide Child with while in high school, but that she would have purchased if she had received appropriate child support from M.L.M. (**See** M-24, List of Items Would Provide for Child). The expense sheet spans eleven pages and lists 152 items including expensive designer and name brand attire; for example, a single sweater ($265.00), a cross-body bag ($485.00) and a pair of sandals ($398.00). It also includes several vacations including a trip to Hawaii ($11,878.00), Europe ($12,191.00), theater trips to New York City including overnight accommodations, various school dance and party expenses at private clubs, along with one-time capital improvements including renovation of Child's bathroom and bedroom at C.L.M.'s residence. Other expenses include: prom ($1,449.00); participation in Disney Races ($2,877.00); Broadway show Hamilton ($3,195.00); a Colorado ski trip ($5,922.00); a Chinese immersion program ($10,614.00); and a new car ($31,754.00). Although C.L.M. testified that the items on the second expense sheet were representative of those purchased by Child's peers, she did not call Child,

classmates or anyone else to testify in support of this claim, nor did she have any documentation to substantiate the expenses. (**See** N.T. Hearing, 9/18/18, at 39-40, 82-84).

The trial court initially overruled M.L.M.'s objection to Exhibit M-24 without prejudice and ultimately concluded that this expense sheet was inadmissible and, in the alternative, unreasonable. On December 27, 2018, the trial court entered a Memorandum and Order directing M.L.M. to pay support for the three-year period at issue for Child in an amount totaling $325,896.00 (approximately $108,632.00 per year), with all arrears resulting from entry of the order paid within fourteen days. C.L.M. appealed the support order to this Court, challenging the trial court's treatment of the expenses she listed for Child as commiserate with her peers on Exhibit M-24.

On October 16, 2019, this Court filed a Memorandum remanding the matter to the trial court for the limited purpose of making findings of fact as to whether each item on Exhibit M-24 was reasonable in light of the high-income child support guidelines.[2] On March 9, 2020, after considering the

---

[2] Our directive was narrow in scope and instructed the trial court to "conduct[] a separate reasonable needs analysis in the third step of the high-income guidelines by assessing the deviation factors found in Rule 1910.16–5 and make findings as to whether each item on the list was reasonable." (**Metzker**, **supra** at *3). We noted that the court should explain any deviations and consider whether M.L.M. provided accurate expense reports, as well as the fact that, as the non-custodial parent, he did not exercise any partial custody or visitation. (**See id.**).

record again, the trial court issued a Memorandum and Order confirming in all respects its December 27, 2018 order. It expressly rejected the M-24 expense sheet as unreasonable and excessive in its entirety, and concluded that not one item on the list was reasonable, when viewed in conjunction with its award of support based on C.L.M.'s first list of actual expenses. (*See* Trial Ct. Op., 3/09/20, at 5). It also concluded that its support order of $325,896.00 provided ample funds for the categories set forth on M-24, and that it would be unreasonable and unconscionable to award additional monies, especially in light of the fact that M.L.M. was directed to make a lump sum payment of $119,616.00 in support after Child became an adult. (*See* Trial Ct. Op., 5/05/20, at 3, 6, 9). C.L.M. timely appealed, and she and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)-(b).

## II.

As noted, at the core of this appeal is the propriety of M-24, the list prepared by C.L.M. of goods and services she would have provided to Child if increased child support had been available to her from 2015 through Child's emancipation in 2018. C.L.M. contends that the trial court failed to comply with this Court's directives on remand relating to Exhibit M-24 and that it should have held further proceedings on the issue of Child's reasonable needs. C.L.M. further claims that the trial court did not consider the accuracy of

- 5 -

M.L.M.'s expense reports or the financial impact of his total lack of contact with Child.[3]

"The principal goal in child support matters is to serve the best interests of the child through provision of reasonable expenses." *Kimock*, *supra* at 855 (citation omitted). "The duty of child support, as every other duty encompassed in the role of parenthood, is the equal responsibility of both mother and father." *Id.* (citation omitted).

We are also mindful that when considering issues of credibility and the weight of the evidence, we defer to the findings of the trial court, as it had the ability to observe the testimony. *See A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014). This is especially significant in cases such as this, where the trial court acted as fact-finder and observed the demeanor of M.L.M. and C.L.M over the course of several hearings.

In high-income cases, application of the support guidelines requires discrete consideration of the reasonable needs of the particular child involved. *See Hanrahan v. Bakker*, 186 A.3d 958, 983 (Pa. 2018). Consideration of the individual child's reasonable needs will prevent support awards "from

_____

[3] "When evaluating a child support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground." *Kimock v. Jones*, 47 A.3d 850, 854 (Pa. Super. 2012) (citation omitted). "We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order." *Id.* (citation omitted).

inappropriately increasing in tandem with an obligor's income into perpetuity and resulting in a mere transfer of wealth between parents." *Id.* at 976.

In **Hanrahan**, our Supreme Court addressed the application of the child support guidelines in high-income cases where the parties' combined monthly net income exceeds $30,000.00  *See* Pa.R.C.P. 1910.16-3.1.  In these circumstances, child support is calculated based on a three-step formula.  *See id.*  The first step applies a fixed percentage to calculate the support amount and is an extrapolation of available economic data to high-income cases.  *See id.*, comment.  The second step allows an adjustment based on the physical custody, or lack thereof, exercised by the payor.  This appeal concerns the third step, which provides:

> (3) The trier-of-fact shall consider the factors in Pa.R.C.P. No. 1910.16-5 [(relating to deviation factors)] in making a final child support award and shall make findings of fact on the record or in writing.  After considering the factors in Pa.R.C.P. No. 1910.16-5, the trier-of-fact may adjust the amount calculated pursuant to subdivisions (1) and (2), subject to the presumptive minimum.

Pa.R.C.P. 1910.16-3.1.(3).

Rule 1910.16-5 states:

> **(a) Deviation.**  If the amount of support deviates from the amount of support determined by the guidelines, the trier of fact shall specify, in writing or on the record, the guideline amount of support, and the reasons for, and findings of fact justifying, the amount of the deviation.
>
> *Note:*  The deviation applies to the amount of the support obligation and not to the amount of income.

**(b) Factors.** In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:

> (1) unusual needs and unusual fixed obligations;
>
> (2) other support obligations of the parties;
>
> (3) other income in the household;
>
> (4) ages of the children;
>
> (5) the relative assets and liabilities of the parties;
>
> (6) medical expenses not covered by insurance;
>
> (7) standard of living of the parties and their children;
>
> (8) in a spousal support or alimony pendente lite case, the duration of the marriage from the date of marriage to the date of final separation; and
>
> (9) other relevant and appropriate factors, including the best interests of the child or children.

Pa.R.C.P. 1910.16-5(a),(b)(1)-(9). A trial court must "conduct a separate reasonable needs analysis in the third step of the high income guidelines by assessing the deviation factors found in Rule 1910.16–5(b), in conjunction with the income and expense statements required in such cases." *Hanrahan*, *supra* at 976.

In *Branch v. Jackson*, 629 A.2d 170 (Pa. Super. 1993), this Court found with respect to high-income cases that reasonable needs are relative and may include items considered extravagant to parents whose income does

not allow for them. *See id.* at 171.[4] Children of wealthy parents are, therefore, entitled to benefits that their financial status indicates to be reasonable, including educational advantages, lessons, travel, the best medical care, quality clothing and familiarity with good restaurants, hotels, shows and camps. *See id.*[5]

In this case, the trial court performed the reasonable needs analysis pursuant to the guidelines and determined that multiple deviations were warranted under factor (7) pertaining to the parties' standard of living. The trial court explained its rationale as follows:

> [W]ithout the $3.8 million amortized . . . the step one formula percentage would yield $4,622 per month and $4,510 per month for specified periods. The [court], in step 3, found the child's reasonable needs to be $8,157 per month and $8,603 per month, which are higher than what the formula in step 1 yields. Therefore, it would be unfair to the child to award the step one amount. Thus, the [court] deviated upward from the formula step one and awarded the child the significantly higher amount of money as reflected in the [court's] finding of reasonable needs for the child under step three. . . .

---

[4] We are aware that this case pre-dates the high-income guidelines and was decided pursuant to case law.

[5] Mother points to the trial court's reliance on *Sirio v. Sirio*, 951 A.2d 1188 (Pa. Super. 2008), for disallowing the M-24 expense sheets and maintains that the court rejected them as aspirational. *Siro* pre-dates the high-income guidelines and involved a high-income Father supporting three teenage sons. This Court found that Mother's inclusion of aspirational expenses for future vacations was improper. *See id.* at 1197. However, in this case, we read the trial court's decision as rejecting the expenses for Child when considering the parties' standard of living under the guidelines because they were unreasonable to the point of outrageousness and not because they were aspirational.

On the other hand, with the influx of the net of $3.8 million income to Father spread out over 27 months, the step one percentage formula would yield $16,486 per month support for one child and $11,043 for one child, and $17,247 per month for one child for various periods. The court found, however, that the child's reasonable needs would reasonably warrant $9,272 per month, $8,938 per month, and $10,323 per month for various periods. Therefore, the [court] effectuated a downward deviation from step one to step three. The court utilized mother's first expense sheet which it found reasonable, in all respects, and not the additional hypothetical expense sheet for "extras", which it found unreasonable in all respects. . . .

(Trial Ct. Op., 3/09/20, at 27-28) (emphases omitted).

The trial court further explained that in making these deviations and determining Child's reasonable needs, it carefully considered the parties' credibility and required them to submit their respective expense sheets in the proper form. (*See id*. at 28-29). The trial court expressed concern regarding C.L.M.'s motives and sincerity in presenting the second expense list M-24, where the court had awarded her every cost on the first list of actual expenses, which M.L.M. had challenged as too high. (*See id.* at 15). The trial court also noted its twenty-three years of experience on the bench, primarily in family court in the Commonwealth's wealthiest county, and it specifically found C.L.M.'s second expense list excessive in its entirety and shocking to the conscience. (*See id.* at 5-7).

Regarding the trial court's decision not to make a deviation based on M.L.M.'s lack of contact with Child, it explained that physical distance between the parties, the busy activities of Child, along with M.L.M.'s separate contentious litigation in Texas involving his children there, were problematic

in implementing any continuous, ongoing contact between him and Child. (*See id.* at 23-24). The court found that M.L.M. had always been a high earner and generous to his children in providing substantial support monies, and it noted that this situation is far from the typical case where any such deviation is warranted, typically only in extreme cases of abandonment. (*See id.* 15, 24-25). The court also made an express credibility determination that the evidence M.L.M. presented on the issue of his expenses was reasonable and accurate. (*See id.* at 20-21).

On consideration of this matter after remand, we are satisfied that the trial court has fulfilled our prior mandate and we defer to its credibility determinations as to the propriety of the expenses listed in M-24, when viewed in conjunction with Child's actual expenses, every penny of which were awarded. Child was in no way deprived of educational or social opportunities and she was awarded a lump sum payment in excess of $100,000 for her care after she reached adulthood. The record reflects the trial court considered all aspects of this case in crafting and reaffirming its support order, after hearing extensively from both parties about Child's reasonable needs over the course of several proceedings.

Order affirmed. Jurisdiction relinquished.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 10/15/2020*