J-S25017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| SHIVA NOVOBILSKI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NORMAN NOVOBILSKI | : | |
| | : | |
| Appellant | : | No. 327 EDA 2023 |

Appeal from the Order Entered January 3, 2023
In the Court of Common Pleas of Northampton County
Domestic Relations at DR-0090619, PASCES: 406117766

BEFORE:  NICHOLS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED SEPTEMBER 12, 2023**

Norman Novobilski (Father) appeals from the order awarding "$1,401.00 per month[,] allocated $1,274.00 for family support for [Shiva Novobilski (Mother)] and one (1) child … plus $127.00 per month to apply on arrears."  Order, 1/3/23, at 1.  After careful consideration, we affirm.

This case began on or about August 25, 2019, when Mother filed a complaint for spousal and child support.  Mother sought child support for the parties' adult daughter (Child), who was born in May 2000.[1]  The trial court explained:

> There is no dispute [Child] … is severely disabled and resides with [Mother].  [Child] is unable to communicate her needs and requires assistance with all activities of daily living.  [Child] is totally dependent on her caretaker and cannot be left alone.

---

[1] The parties have another child who was born in 1999.  **See** N.T. (Mother's Deposition), 7/18/22, at 4.

[Child]'s conditions will not improve, and she needs continuing care and treatment from specialists.

Trial Court Opinion, 3/31/23, at 7 (record citations omitted).

The record indicates neither party has filed for divorce.[2]  However, the trial court has issued four support orders in the past four years.  On May 1, 2021, Child turned 21.  Child had been enrolled in the Northampton School District, but when she turned 21, she became ineligible for public school services.  *Id.* at 7 (citing Mother's 6/18/22 deposition testimony).  As a result, Mother "applied for and received a 'Community Living Waiver' for Child through Medical Assistance."  *Id.*  The waiver provided $85,000 annually for Child's care.  *Id.* at 4.  The funds are administered by "PALCO, a financial management service, which provides claims and billing services for employment of home and community-based support workers and in-home care services."  *Id.*

The trial court summarized the following procedural history:

> On December 1, 2021, [Father] filed a Petition for Modification, and a conference was scheduled for January 27, 2022.  On January 31, 2022, the Honorable Paula A. Roscioli entered an Order continuing the Petition for Modification, pending receipt of documentation regarding [Mother's] employability and verification of expenses related to actual or anticipated daycare costs for [C]hild.  On March 9, 2022, Judge Roscioli entered an Order directing [Father] to pay $2,271.00 per month for support, effective November 23, 2021, allocated as $2,065.00 for the basic

---

[2] According to Mother, "Father left the marital residence in August, 2017." Mother's Brief at 5.  Mother states that Father "has not contributed to the care of [Child] (except for the payment of Child Support), since that time."  *Id.* Father agrees the parties "separated in August of 2017."  Father's Brief at 13.

support of one child and spousal support, plus $206.00 for arrears. [Father] was directed to be responsible for 75% of unreimbursed medical expenses and was required to provide medical insurance. Spousal support was set to terminate upon the parties' divorce or other order of court. [Mother] was no longer assessed an income as the cost of care for [Child] was not feasible, [Child] was no longer eligible to attend high school, and [Mother's] elderly parents were no longer able to sustain the physical demands of caring for [Child] regularly.

On March 28, 2022, [Father] filed a written demand for a *de novo* hearing. The parties appeared before Judge Roscioli on May 11, 2022, at which time the parties were directed to develop the record by way of depositions in lieu of live testimony and a hearing was scheduled for the September 12, 2022 *de novo* hearing list. The parties appeared before the [trial court] on September 12, 2022. On November 7, 2022, [the trial court] entered an Order directing [Father] to submit a brief within 21 days and [Mother] to submit a brief 14 days thereafter. The parties complied with this directive, and the matter was taken under advisement.

Trial Court Opinion, 3/31/23, at 2-3 (record citations omitted).

On January 3, 2023, the trial court issued the order from which Father

appeals. The trial court explained that

after review of the parties' submissions and the entirety of the record in this matter, the [trial court] entered the Order of Court currently on appeal. The January 3, 2023 Order directed [Father] to comply with a modified support amount of $1,401.00 per month, allocated $1,274.00 per month for the support of [Mother] and one child, plus $127.00 for arrears. We noted [Mother] had the ability to receive monthly compensation for providing care for [C]hild on the Order, and that [C]hild was approved to receive an $85,000.00 annual waiver for her care in March 2021, through PALCO, a financial management service, which provides claims and billing services for employment of home and community-based support workers and in-home care services. The Order was based on an assessed full time earning capacity for [Mother] of $18.00 per hour for 40 hours per week, resulting in an average monthly assessed gross income for [Mother] of $3,120.00, and an average monthly assessed net income of $2,593.00. We noted that this assessment was based on the records received from

- 3 -

PALCO indicating that the pay rate for an in-house care giver was $18.00 to $20.00 per hour. [Father's] income was based on his paystubs and Veterans Affairs benefits, resulting in an adjusted monthly net income for [Father] of $5,553.00. The Order considered [Father's] $420.00 per month expense for health benefits for the three parties on the order.

Trial Court Opinion, 3/31/23, at 3-4 (record citations omitted).

Father timely filed a notice of appeal and court-ordered concise statement pursuant to Pa.R.A.P. 1925(b).

### APPEALABILITY

On February 27, 2023, this Court issued a rule to show cause upon Father, because "it is unclear if [the order] is an appealable order." Order, 2/27/23. We explained:

[I]t is unclear from the language of the January 3, 2023 order if the January 3rd order is an allocated order, as the order states, or … is unallocated. Specifically, the … order directs "$1,401.00 per month **allocated** $1,274.00 per month for family support for spousal and one (1) child, plus $127.00 per month to appeal to apply to arrears." An **allocated** support order lists the spousal support amount and child support amount separately. Moreover, in an **allocated** support order, the portion of spousal support is only appealable if a divorce decree has been entered and all economic claims have been resolved.

*Id.* (bold and underline in original) (citing ***Capuano v. Capuano***, 823 A.2d 995 (Pa. Super. 2003) (the portion of an order attributable to child support is final and immediately appealable; the portion of an order allocated to spousal support is interlocutory until a divorce decree has been entered and economic claims have been resolved)).

- 4 -

Father filed a response, after which this Court issued a *per curiam* order discharging the rule to show cause. Order, 3/9/23. The *per curiam* order stated:

> On March 8, 2023, [Father] filed a response indicating the January 3rd order is an allocated support order, as revealed in the "guideline worksheets" appended to the January 3, 2023 order. [Father] also asserts that only the child support portion of the order is appealable since no divorce decree has been entered.
>
> Accordingly, <u>this appeal shall proceed solely in child support</u>. ***See*** Pa.R.A.P. 341(b)(1) (a final order is any order that disposes of all claims and of all parties); ***Leister v. Leister***, 684 A.2d 192 (Pa. Super. 1996) (the difference between spousal support and alimony *pendente lite* claims, no matter if filed as part of a divorce action or separately, is negligible, and neither is appealable until all economic issues have been resolved and a divorce decree has been entered); ***Fried v. Fried***, 501 A.2d 211 (Pa. 1985) (issues in divorce are reviewable after entry of divorce decree and resolution of all economic issues); ***Hrinkevich v. Hrinkevich***, 676 A.2d 237 (Pa. Super. 1996) (notwithstanding pending divorce action[,] child support orders are immediately reviewable). The show cause order is discharged.

***Id.*** (underline in original).

In his brief, Father claims this Court has jurisdiction pursuant to "Pa.R.A.P. 341, as the rule applies to a final child support order." Father's Brief at 1. Father states the January 3, 2023 order "is an allocated order of support awarding spousal support and child support" based on "the guideline worksheets" appended to the order, which "calculate a specific spousal support amount and child support." ***Id.***

Mother confirms there "is no statement in the Order of January 3, 2023, as to whether the amount of [s]upport … is allocated or unallocated between Child Support and Spousal Support." Mother's Brief at 2. Mother states that

- 5 -

although "this Court would have the ability to immediately review the portion of the Order attributable to Child Support, the Order is unallocated between Child Support and Spousal Support." *Id.* at 14.

Upon review, we conclude the entire order is appealable. "It is well-recognized that a spousal support order entered during the pendency of a divorce action is not appealable until all claims connected with the divorce action are resolved." *Thomas v. Thomas*, 760 A.2d 397, 398 (Pa. Super. 2000). However, in this case, the record indicates neither party has filed a divorce complaint and there is no divorce pending. Father states that the parties "are married … and a divorce action pending." *See* Father's Brief at 13 (citing Reproduced Record at 350a). This statement is not accurate. Page 350a of the Reproduced Record is a copy of page 5 from the transcript of Mother's June 18, 2020 deposition.[3] Mother never stated that a divorce action was pending. N.T., 6/18/20, at 5. She stated she was "married for now." *Id.* Mother described her marital status as "separated," and added that she and Father had separated "in August of 2017." *Id.*

In *Hasson v. Hasson*, 696 A.2d 221 (Pa. Super. 1997), wife appealed from a spousal support order and husband argued the appeal was interlocutory. This Court disagreed with husband because he did not file for divorce until after wife appealed the support order. We stated that if the

---

[3] The certified record includes notes of testimony from the June 18, 2020 deposition, as well as notes of testimony from Mother's subsequent deposition on July 18, 2022.

support order been entered after husband filed for divorce, "the appeal would not have been properly before us and would have been quashed." ***Id.*** We explained:

> If the [spousal support] order had been entered while a divorce action was pending, we would, following ***Leister*** [***v. Leister***, 684 A.2d 195 (Pa. Super. 1996)], quash the appeal as interlocutory. However, when the present order was entered, no divorce action was pending. Anything filed after the date Wife filed her appeal can have no impact on our jurisdiction to hear this appeal. ***Albee Homes, Inc. v. Caddie Homes, Inc.***, 417 Pa. 177, 207 A.2d 768 (1965) (reviewing court must consider only the facts which were of record and before the trial court on the date the decision was rendered); ***Kilian v. Allegheny Co. Distributors***, 409 Pa. 344, 185 A.2d 517 (1962) (stipulation … could not be considered; facts not in record of the trial court at time of appeal cannot be considered by reviewing court). Notably, the record certified to this court contains no reference to a divorce complaint; no complaint or other pleadings appear in the record and the docket entries do not show that a complaint was filed or that any other action was taken relating to a divorce action. As we cannot consider facts which are not on the record … and the record does not reveal either the filing of a divorce action or that the support order was entered during the pendency of a companion divorce action, we must review this case as a support-only matter. … The order is therefore appealable.

***Hasson***, 696 A.2d at 222 (some citations and footnote omitted).

Consistent with our review of the record and the holding in ***Hasson***, we conclude the entire January 3, 2023 support order is appealable. We thus amend our *per curiam* order to rescind the provision stating that "this appeal

shall proceed solely in child support."[4]  Order, 3/9/23 (underline omitted).

Because the appeal is properly before us, we consider Father's issues.

Father presents two related issues:

A. DID THE TRIAL COURT ERR AS A MATTER OF LAW AND ABUSE ITS DISCRETION IN FAILING TO ASSESS [MOTHER] A FULL-TIME EARNING CAPACITY AS A PHARMACIST?

B. DID THE TRIAL COURT ERR AS A MATTER OF LAW AND ABUSE ITS DISCRETION IN FAILING TO ASSESS [MOTHER] A FULL-TIME EARNING CAPACITY AT THE CURRENT CAREGIVER RATE PAID FOR IN-HOME CAREGIVERS UNDER THE ADULT CHILD'S HOME AND COMMUNIT[Y] BASED WAIVER?

Father's Brief at 7.

As Father challenges the trial court's assessment of Mother's earning capacity in both issues, we address them together.

<u>MOTHER'S EARNING CAPACITY</u>

Father first asserts the trial court erred by "fail[ing] to assess Mother a full-time earning capacity as a pharmacist." *Id.* at 18.  Father states, "Mother consistently employs family members as caregivers for [Child], at no cost to her." *Id.* at 21 (citation to Reproduced Record omitted).  According to Father, Mother pays caregivers from the "$85,000.00 annual Waiver earmarked" for Child's care, and thus has "ample opportunity to work outside the home as a pharmacist." *Id.*  Father contends, "Mother has willfully failed to maintain appropriate employment as a pharmacist despite having in-home care for

---

[4] The *per curiam* order also stated it was "not a final determination as to the propriety of the appeal."  Order, 3/9/23.

[Child] at no cost to her." *Id.* at 20. In his second issue, Father alternatively argues the trial court erred "in failing to assess Mother a full-time earning capacity at the current caregiver rate paid for in-home care" of $20.00 per hour. *Id.* at 22-23.

Mother counters that the trial court "decided this matter in accordance with law and within the bounds of its discretion." Mother's Brief at 12. According to Mother, the trial court "considered the entire, voluminous evidentiary record, which included the testimony of two (2) non-party witnesses." *Id.* at 19. Pertinently, Mother claims the trial court "made no errant findings of fact." *Id.* at 13. She asserts the trial court properly determined that "although Mother had willfully failed to obtain employment, assessment of Mother's income as a full-time pharmacist was not appropriate given the factors set forth in [the support guidelines at] Rule 1910.16-2(d)(4)(ii)." *Id.* at 19. Mother concludes Father is attempting "to replace the discretionary judgment of the [t]rial [c]ourt with that of Father or of this Honorable Court." *Id.* at 13. Upon review, we agree.

Our standard of review is well-settled:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will,

discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

***Kimock v. Jones***, 47 A.3d 850, 854 (Pa. Super. 2012) (citations omitted).

As Mother observed, the Rules of Civil Procedure set forth support guidelines which specifically address earning capacity. Rule of Civil Procedure 1910.16-2 directs the calculation of a party's monthly net income. The relevant language states:

> Generally, the basic child support, spousal support, or alimony *pendente lite* obligation is based on the parties' monthly net incomes.
>
> …
>
> **(d) Reduced Income or Fluctuating Earnings.**
>
> (4) *Earning Capacity.*
>
> (i)  When a party willfully fails to obtain or maintain appropriate employment, the trier-of-fact may impute to the party an income equal to the party's earning capacity.
>
>  (A) Earning Capacity Limitation. The trier-of-fact:
>
>   (I)  shall not impute to the party an earning capacity that exceeds the amount the party could earn from one full-time position; and
>
>   (II)  **shall determine a reasonable work regimen based upon the party's relevant circumstances**, including the jobs available within a particular occupation, working hours and conditions, and whether a party has

exerted substantial good faith efforts to find employment.

(B) The trier-of-fact shall base the party's earning capacity on the subdivision (d)(4)(ii) factors.

(C) After assessing a party's earning capacity, the trier-of-fact shall state the reasons for the assessment in writing or on the record.

(D) When the trier-of-fact imputes an earning capacity to a party who would incur childcare expenses if the party were employed, the trier-of-fact shall consider reasonable childcare responsibilities and expenses.

(ii)     Factors.  In determining a party's earning capacity, the trier-of-fact shall consider the party's:

    (A)     childcare responsibilities and expenses;

    (B)     assets;

    (C)     residence;

    (D)     employment and earnings history;

    (E)     job skills;

    (F)     educational attainment;

    (G)     literacy;

    (H)     age;

    (I)     health;

    (J)     criminal record and other employment barriers;

    (K)     record of seeking work;

    (L)     local job market, including the availability of employers who are willing to hire the party;

    (M)     local community prevailing earnings level; and

    (N)     **other relevant factors**.

Pa.R.C.P. 1910.16-2(d)(4) (bold emphasis added).

"A person's earning capacity is defined not as an amount which the person could theoretically earn, but as that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training." *Gephart v. Gephart*, 764 A.2d 613, 615 (Pa. Super 2000). Past earnings alone are not sufficient to support a determination of earning capacity without corroborating evidence that the party still has the capacity to earn that amount. *Conner v. Conner*, 217 A.3d 301, 314 (Pa. Super. 2019) (citing *D.H. v. R.H.*, 900 A.2d 922 (Pa. Super. 2006) (holding trial court erred in determining earning capacity based solely on party's most recent tax return)).

Instantly, the support order states:

> Per Depositions submitted, [Mother] does have the ability to receive monetary compensation for providing care for [C]hild []. [C]hild was approved to receive an $85,000.00 annual waiver for her care in March of 2021 through PALCO, a Financial Management Service, which provides claims and billing services for employment of Home and Community Based support workers and in-home care services.

> As [Mother] does have an available source of income, she is assessed a full-time earning capacity based on $18.00 per hour at 40 hours per week. This is an average monthly assessed gross of $3,120.00, with an adjusted monthly assessed net of $2,593.00. Assessment is based on PALCO records indicating the pay rate for an in-house care giver is $18.00 to $20.00 per hour.

Order, 1/3/23, at 1.

The trial court explained that it imputed income to Mother after determining Mother "willfully failed to obtain or maintain" employment. Trial Court Opinion, 3/31/23, at 11. However, the trial court concluded "it would

- 12 -

not be appropriate to assess [Mother] full-time income as a pharmacist." *Id.*

The trial court reasoned:

> Initially, the record was clear that [Mother] had not worked as a pharmacist on a full-time basis since [Child] was born. [Father's] arguments regarding [Mother's] prior hours worked were not convincing, as circumstances have changed since [Mother] last worked close to full-time hours, as the family has separated and [Child] has aged out of the educational system.

*Id.*

The trial court did not abuse its discretion. Mother has not worked full-time since Child's birth in 2000. *See* N.T. (Mother's Deposition), 7/18/22, at 27. Father concedes that before Child turned 21 and became ineligible for public school services, "Mother's income was based upon her actual earnings as a per diem staff pharmacist." Father's Brief at 8.

Our review discloses that Mother provided the majority of Child's care in the six months after Child was born, including "tube feeding," "doctor appointments all week long," and overall "around-the-clock" care. N.T. (Mother's Deposition), 7/18/22, at 28. In November 2000, Mother began working on weekends and holidays as a per diem pharmacist for Omnicare. *Id.* at 28-29. Mother worked for Omnicare for nine years. *Id.* at 29. She then "transfer[red] to a sister company," Heartland Health Care. *Id.* Mother continued to work per diem, 20 hours per week, "but not work the weekend … hours, but work after [Father] got home until midnight or after. It was a different shift." *Id.* Mother worked at Heartland Health Care for almost five years. *Id.*

- 13 -

In 2015, Mother began working as a per diem pharmacist for Easton Hospital and Pharmerica. *Id.* at 30. At that point, Child was in school, so Mother could work during the day, and both employers accommodated her schedule. *Id.* Mother worked "maybe 20 hours a week," consisting of every other weekend at Easton Hospital, and at Pharmerica, "whenever they … needed me they would put me in the schedule[,] so it was not standard hours." *Id.* Mother's employment with Pharmerica terminated "after two or three years," because the company relocated. *Id.* at 30-31.

Around 2020, Easton Hospital was bought by St. Luke's Hospital. *Id.* at 31. Mother worked at St. Luke's until December 2021. *Id.* Mother was part-time at St. Luke's, but her hours were "variable," and she was required to work "multiple shifts that you had to rotate through." *Id.* at 32. Mother left St. Luke's shortly after Child turned 21, because she "wasn't able to take care of [Child] working the hours that I had to work there." *Id.*

Keri Kresge, who is employed by Service Access Management, explained that she locates, coordinates, and monitors "waiver services" for disabled individuals, including Child. N.T. (Ms. Kresge's Deposition), 7/18/22, at 5-7, 10-11. Ms. Kresge stated there are "no institutions" for someone with Child's disabilities.[5] She explained that Child's services "have to fit within the waiver

_____

[5] Ms. Kresge clarified, "There is White Haven, but you[,] I believe[,] have to be criminally insane to be in White Haven. Other than that, no, there are institutions." N.T. (Ms. Kresge's Deposition) 7/18/22, at 66.

amount of $85,000." *Id.* at 67. Ms. Kresge also explained that in her experience, caregivers are "mostly" family members, and it is "not uncommon" for waiver funds to be paid to family members who care for a disabled relative. *Id.* at 68-69. According to Ms. Kresge, compensation of "$18 to $20 an hour is typical." *Id.* at 68. Ms. Kresge confirmed that although Mother was eligible, she opted not to be a paid caregiver. *Id.* at 70-71.

Consistent with this evidence, the trial court explained:

The record clearly reflects that [C]hild … is severely disabled and requires one-to-one constant care. [Child] resides with [Mother], has aged out of the educational system, and **the cost of day care services for [Child], to allow [Mother] to work full-time, would exceed the $85,000.00 Waiver available for [Child]'s care**. [Mother] is a licensed pharmacist, having attained a Bachelor of Science degree in pharmacy from Temple University in 1994. Deposition of [Mother] at p. 13, 18, Father's Exhibit 4. However, **it is not feasible for her to work a full-time job as a pharmacist, as she has not done so since [Child]'s birth and the cost to allow [Mother] to do so is cost prohibitive**. [Father's] arguments regarding [Mother's] prior employment, and ability to currently be employed fail, given the changed circumstances since May 2021. The record reflects that [Child] had been able to attend the Northampton School District and received extensive services during the day, including one-to-one aid and special transportation. Once [Child] aged out of the public school system, the potential cost of care for [Child] increased dramatically, from essentially $0.00 at school to $73,000.00 or more. Therefore, **it would not be appropriate to assess [Mother] an income as a full-time pharmacist**, her prior area of employment.

However, the record in this matter also indicates [Mother] is eligible to be employed under the terms of the Waiver, as the caregiver for [Child]. *See* Deposition of Kresge at 71; Deposition of [Mother] at p. 84. Therefore, while [Mother] cannot work full-time outside of the home as a pharmacist, it is inappropriate for [Mother] to remain on unemployment compensation and/or remain unemployed to care for [Child] when she can be

- 15 -

compensated through the Waiver for caring for [Child]. [Father] obtained records from PALCO related to services provided for [Child]. Those records indicate that both [the parties' older daughter] and [Mother's mother] received payment for services provided for [Child]. *See* Father's Exhibit 8. Those records also reflected a rate of pay of $18.00 to $20.00 per hour. Based upon these records, procured and submitted by [Father], we determined that it was appropriate to assess [Mother] a full-time income based upon $18.00 per hour, 40 hours per week.

Trial Court Opinion, 3/31/23, at 12-13 (emphasis added).

The record supports the trial court's reasoning and refutes Father's claim that the trial court erred by failing to assess Mother a full-time earning capacity as a pharmacist.

Father's second issue is also unavailing. Father claims the trial court "erred as a matter of law and abused its discretion in failing to assess Mother a full-time earning capacity at the current caregiver rate paid for in-home care as evidenced in the PALCO records." Father's Brief at 32. Father argues the trial court "should have assessed Mother at $20 per hour effective [April 26, 2022]." *Id.* (citation to Reproduced Record omitted).

Father cites no legal authority to support his argument. The Pennsylvania Supreme Court recently repeated that the "rules of appellate procedure are explicit that the argument contained within a brief must contain 'such discussion and citation of authorities as are deemed pertinent.'" *Commonwealth v. Armolt*, 294 A.3d 364, 376 (Pa. 2023) (citations omitted).

Unlike Father, Mother cites the support guidelines and case law in asserting, "Father's argument is, in essence, that he disagrees with the [t]rial [c]ourt's conclusion." Mother's Brief at 20; *see id.* at 18-22. Mother claims Father is "attempting to utilize the availability of the Community Living Waiver funds to offset his [s]upport [o]bligation." *Id.* at 22. Mother states the "records from PALCO indicate that the rate of pay ranged from $18.00 to $20.00 per hour and that the majority of payments made were at the $18.00 [hourly] rate." *Id.* Mother emphasizes, "Father is asking this Court to overrule the [t]rial [c]ourt's discretionary judgment and substitute its own." *Id.* We agree.

The trial court explained:

Given that [Mother] could choose to be employed as an in-home caregiver for [Child] and be paid out of the Waiver funds instead of employing in-home caregivers or utilizing day care services, we found it appropriate to assess [Mother] an income in accordance with that opportunity. Upon review of the documents obtained from PALCO via subpoena and submitted as Father's Exhibit 8, the documents include pay rates of both $18.00 and $20.00. Under the circumstances of this matter, and given the documentation and testimony provided, we determined that it was appropriate to assess [Mother] at the rate of $18.00 per hour, 40 hours per week. …

… The hourly rate at which [Mother] was assess[ed] was clearly reflected in the PALCO records and is therefore fully supported by the record in this matter.

Trial Court Opinion, 3/31/23, at 13-14.

We discern no error. This Court has stated repeatedly that we "will not interfere with the broad discretion afforded the trial court" unless there is

"insufficient evidence to sustain the support order." ***Sichelstiel v. Sichelstiel***, 272 A.3d 530, 537–38 (Pa. Super. 2022) (citation omitted); ***see also Kimock***, 47 A.3d at 854. The record contains ample evidence to sustain the trial court's assessment of Mother's earning capacity. Accordingly, we affirm the January 3, 2023 support order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2023