J-A22031-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MICHAEL L. METZKER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CAMILLE L. MARLOWE | : | |
| | : | |
| Appellant | : | No. 456 EDA 2019 |

Appeal from the Order Entered December 27, 2018
In the Court of Common Pleas of Montgomery County Domestic Relations
at No(s): 2002-03274,
PACSES: 5871047428

BEFORE: MURRAY, J., STRASSBURGER, J.[*], and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED OCTOBER 16, 2019**

Camille L. Marlowe (Marlowe) appeals from the order entered in the Court of Common Pleas of Montgomery County (trial court) setting the child support obligation of Michael L. Metzker (Metzker), a high-income parent, within the meaning of the guidelines. We vacate the trial court's order and remand.

This case began when Metzker filed a petition to reduce child support on June 8, 2015, because his middle child with Marlowe graduated from high school and reached the age of eighteen. On January 19, 2016, after non-record proceedings before a master, the trial court issued an interim order requiring Metzker to pay $5,730.39 per month, effective June 12, 2015, for

_____

[*] Retired Senior Judge assigned to the Superior Court.

the financial support of the remaining minor child, a daughter, born in 1999 (Child). However, before this proceeding concluded, Child became emancipated and she graduated from high school.

Marlowe filed exceptions to this order. The initial hearing was scheduled for August 31, 2016, but because of delays not caused by any of the parties, the hearing did not take place until February 6, 2018. Five additional hearings took place between that date and September 18, 2018. Through discovery responses, Marlowe learned that on March 2, 2016, Metzker had received capital gain income of $3.8 million, net of taxes.

At those hearings, testimony, including the presentation of experts concerning the income of the parties, including the treatment of $3.8 million net of taxes in capital gains that Metzker received,[1] was proffered. Evidence was also introduced concerning Metzker's lifestyle expenses and needs. In addition to other expenses regarding Child, not relevant here, Marlowe proffered expense sheets listing items and activities for Child that would have been purchased or engaged in while she was attending high school if funds had been available. (*See* Mother's Exhibit 24, List of Items Would Provide for Child, at 1-11).[2]

---

[1] Although contested below, neither party discusses on appeal whether the capital gains annualization over a two-year period was appropriate.

[2] The court initially allowed the expense sheets to be entered into evidence and become part of the record; it ultimately found the document inadmissible. (*See* Trial Ct. Op. at 14-17).

The expense sheets included name brand clothing, vacations, theater trips, a new car and various school dance/party expenses. Marlowe contends that while those expenses were not incurred because she could not afford to pay for them, if Metzker was properly paying the amount of child support in accordance with his income, he should not be excused from paying those expenses now because they are reasonably based on what similarly economically situated children incurred.

On December 27, 2018, the trial court entered an order covering three years (June 12, 2015 to June 8, 2018), reflecting five distinct periods necessitated by fluctuation in the parties' net incomes and the reasonable needs of Child.[3] In its February 5, 2019 opinion and order, the trial court agreed with Marlowe's calculation of Metzker's income and found that all of the needs Marlowe initially listed and provided documentary support for concerning Child were reasonable. (*See* Trial Ct. Op., at 9, 11, 21). However, the trial court refused to admit those expense sheets "as they are merely 'aspirational' and 'speculative', and not reasonable, current needs, never having been incurred in the past, and never to be incurred in the future." (*Id.*

---

[3] The effective date of the order is June 12, 2015, and sets Metzker's support obligation for Child at: $8,157 per month, from 6/12/15 through 1/01/16; $8,603 per month, from 1/01/16 through 3/06/16; $9,272 per month, from 3/06/16 through 1/01/17; $10,323 per month from 1/01/17 through 1/01/18; and $10,323 per month from 1/01/18 through 6/08/18. The order averages $108,632 per year. (*See* Order 12/27/18; Trial Court Opinion, 12/27/18, at 17).

at 17). The court went on to find that even if they were admissible, it rejected them as "speculative" and "not reasonable." (*Id.*).

Marlowe timely appealed and she and the trial court complied with Rule 1925. **See** Pa.R.A.P. 1925(a)-(b). The single issue on appeal is whether the trial court properly found that the expenses not incurred by Marlowe were not reasonable.[4] The crux of Marlowe's claim is that the court erred in determining that Child's reasonable needs did not exceed her actual expenses. Marlowe contends that the court should have accepted evidence of the expenses she could not financially afford while she waited for an increase in child support. (**See** Marlowe's Brief, at 36-79).[5]

Metzger, as a high-income parent, has a legal duty to give his children the advantages that his financial status indicates to be reasonable. **See** **Hecht v. Hecht**, 150 A.2d 139, 143 (1959). To determine what the standard of living is or the financial circumstance of the person from whom child support is being sought, it is his "financial circumstances, not his philosophical position on the precise limits of the good life-what he can afford is the question, not

_____

[4] **See** Pa.R.C.P. 1910.16-3.1 (providing child support guidelines in cases where parties' combined monthly net income exceeds $30,000.00).

[5] "When evaluating a [child] support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground." **Kimock v. Jones**, 47 A.3d 850, 854 (Pa. Super. 2012) (citation omitted). "We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order." **Id.** (citation omitted).

what he is willing to pay for." ***Karp v. Karp***, 686 A.2d 1325, 1328 (Pa. Super. 1996).

In ***Hanrahan v. Bakker***, 186 A.3d 958, 983 (Pa. 2018), our Supreme Court addressed the application of the support guidelines in high-income cases. It observed that child support in Pennsylvania is governed by a statute and guidelines contained in the Pennsylvania Rules of Civil Procedure. Under the statute, 23 Pa.C.S. § 4322, the child support guidelines are to be based on two main components: the ability of the payer to pay and the reasonable needs of children. It went on to note that the child support guidelines are created from economic data pursuant to studies regarding the reasonable needs of children in intact households that are revised every four years. The child support guidelines are broken into two parts: a chart and a three-step process.

The court further noted that the chart applies to families that have a combined monthly net income up to $30,000. The reason that the chart stops at that income is that there is no reliable economic data regarding the reasonable needs of children in households where the combined monthly net income exceeds $30,000. Families who have a combined monthly net income in excess of this amount are considered high-income cases and have child support calculated based on the three-step process.

The three-step process is as follows: first, there is a preliminary analysis which includes a percentage of the parties' income in excess of $30,000 added

to the highest amount of support on the chart related to the number of children in the family; the second step contains an adjustment for substantial physical custody of the payer and allocation of additional expenses; and the third step contains deviation factors (such as the standard of living of the parties and their children) to be applied in conjunction with a 50-plus category expense sheet.

Regarding high-income case, our Supreme Court, in **Hanrahan**, held:

> In light of the foregoing, we hold that, because Rule 1910.16–3.1 is based upon an extrapolation of economic data establishing reasonable needs for children in standard income cases rather than actual economic data establishing reasonable needs for children in high income cases, a court should consider the particular children's reasonable needs in applying that rule to fashion support awards in high income cases. Specifically, a court is to conduct a separate reasonable needs analysis in the third step of the high income guidelines by assessing the deviation factors found in Rule 1910.16–5(b), in conjunction with the income and expense statements required in such cases. In so doing, the court must make findings of fact on the record or in writing in making a final child support award. Accordingly, we conclude that the Superior Court erred in holding that the trial court properly fashioned a support award based on the high income guidelines without engaging in a separate and discrete analysis of the **reasonable needs of the Children** in this case.

*Id*. at 976 (emphasis added).

In **Branch v. Jackson**, 629 A.2d 170, 171 (Pa. Super. 1993), we held that reasonable needs of wealthy children are not limited to:

> Reasonable needs are not, of course, limited to the bare necessities of life. The reasonable needs of a child whose parent or parents are wealthy may well include items which would be considered frivolous to parents who are less well off.

Children of wealthy parents are entitled to the educational advantages of travel, private lessons in music, drama, swimming, horseback riding, and other activities in which they show interest and ability. They are entitled to the best medical care, good clothes, and familiarity with good restaurants, good hotels, good shows, and good camps. It is possible that a child with nothing more than a house to shelter him, a coat to keep him warm and sufficient food to keep him healthy will be happier and more successful than a child who has all the 'advantages,' but most parents strive and sacrifice to give their children 'advantages' which cost money.

In attempting to determine whether an expense for a child of wealthy parents is reasonable, the standard is that if other similarly wealthy parents normally incur such expenses for their children, and it is in line with the lifestyle of the parent from which support is sought, then the expense is reasonable, even though, for most people, it would be wildly extravagant. Those additional expenses, once found reasonable, are not any less so because inadequate child support made them unavailable and, in this case, largely because it took so long to resolve the matter.

As noted above, the trial court found that all of the needs Marlowe initially listed and provided documentary support for concerning Child were reasonable. (*See* Trial Ct. Op., at 9, 11, 21). However, the trial court refused to allow the additional expense sheets submitted by Marlowe as speculative, excessive and unreasonable. It mainly did so because those items were aspirational and speculative, because they were not actually purchased. However, that is not the issue; instead, the issue is whether those expenses would be reasonable under the three-step factors enunciated in *Hanarahan*.

In this case, the trial court should have conducted a separate reasonable needs analysis in the third step of the high-income guidelines by assessing the deviation factors found in Rule 1910.16–5 and make findings as to whether each item on the list was reasonable. In doing so, the trial court is obligated to specify (1) the amount of guideline support, (2) the reasons for deviation, (3) the findings of fact justifying deviation, and (4) the amount of the deviation, whether the case is high-income or otherwise. In calculating the amount of deviation, the trial court must calculate guideline support, including the required contributions for medical insurance, private school tuition, summer camp and extracurricular activities. It should also consider whether Metzker failed to provide accurate expense reports, as well as the fact that as the non-custodial parent, he did not exercise any partial custody or visitation.

That having not been done, we vacate the trial court's order and remand for it to make findings of fact, holding further proceedings if necessary. We note that there is concern that if the trial court found any of those expenses reasonable, it would result in a windfall for Marlowe, since she did not actually purchase those items. However, if any of those expenses were reasonable, not to award them would result in a windfall for Metzker. To alleviate those concerns, if the trial court finds that any of the expenses are reasonable, we direct it to enter an appropriate order to advance the interests of Child.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/16/19</u>